UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ALICE M. FREEMAN,  )<br>  )<br>  Plaintiff,  )<br>  )<br> v.  )<br>  )<br> DISTRICT OF COLUMBIA,  )<br>  )<br>  Defendant.  )<br>  ) | Civil Action No. 21-1775 (RBW) |

## MEMORANDUM OPINION

The plaintiff, Alice M. Freeman, proceeding pro se, brings this civil action against the defendant, the District of Columbia, alleging that "the [d]efendant[']s court system[,] judges[,] and employee[s] . . . caused [the p]laintiff to be illegally and wrongfully evict[ed] [ ] from her real property through the use of bias[-]related discrimination[,]" in violation of 42 U.S.C. § 2000(d).  First Amended Complaint ("Am. Compl.") ¶ 5, ECF No. 3.  Currently pending before the Court is the defendant's motion to dismiss the plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1]  See Defendant District of Columbia's Motion to Dismiss the Complaint with Prejudice ("Def.'s Mot." or the "defendant's

---

[1] Although the defendant "moves [for dismissal] under Fed[eral] R[ule of] Civ[il] Pro[cedure] 12(b)(6)[,]" it argues that the plaintiff's claim "is barred for lack of jurisdiction," Defendant District of Columbia's Motion to Dismiss the Complaint with Prejudice ("Def.'s Mot." or the "defendant's motion") at 1, ECF No. 4, which is properly addressed under Rule 12(b)(1), see Fed. R. Civ. P. 12(b)(1).  Because the Court's ruling on dismissal pursuant to Rule 12(b)(1) is ultimately dispositive, see infra Section III, the Court need not conduct a Rule 12(b)(6) analysis, see Sledge v. United States, 723 F. Supp. 2d 87, 91 (D.D.C. 2010) ("Once a court 'determines that it lacks subject matter jurisdiction, it can proceed no further.'" (quoting Simpkins v. D.C. Gov't, 108 F.3d 366, 371 (D.C. Cir. 1997)); see also Green v. Stuyvesant, 505 F. Supp. 2d 176, 177 n.2 (D.D.C. 2007) (Walton, J.) ("[D]ue to the resolution of the defendants' Rule 12(b)(1) request, the Court does not need to address [ ] alternative grounds for dismissal at this time.").

motion") at 1, ECF No. 4.  Upon careful consideration of the parties' submissions,[2] the Court concludes for the following reasons that it must grant the defendant's motion.

## I.     BACKGROUND

### A.     Factual Background

As best as the Court can discern from the plaintiff's Amended Complaint, she alleges that the "[d]efendant[']s court system and its Landlord Tenant branch[,] [ ] through practices related to bias and discrimination against [her,]" Am. Compl. ¶ 11, "at various stages of litigation activities[,]" id. ¶ 12, "caused [her] to be illegally evicted from her real property[,]" id. ¶ 11.  The plaintiff alleges that the "[d]efendant exacted its bias[-]related discrimination practices against [her]" "because of [her] husband[] Cleo L. Holmes['] years of dedication and advocacy to his community[.]"  Id. at 8.  For her alleged injuries, the plaintiff "is seeking punitive damages" equal to "the value of the real property [from which she] was [allegedly] illegally evicted[.]"  Id. ¶ 11.  The prior landlord-tenant and foreclosure-related "litigation activities[,]" id. ¶ 12, referenced in the plaintiff's Amended Complaint, see id. ¶¶ 6–10, are described in greater detail below.

### 1. The 2010 Foreclosure Action

The first case referenced in the plaintiff's Amended Complaint is a lawsuit that she filed in the Superior Court of the District of Columbia on June 18, 2010 (the "2010 Foreclosure Action"), seeking "the return of her real property when [she] was informed by [the] lender [that] her real property was purchased at [an] auction by Fannie Mae and [that she] must vacate [the property] immediately."  Am. Compl. ¶ 6; see also Dunston v. SunTrust Mortg., Inc., No. 2010

---

[2] In addition to the filings already identified, the Court considered the following submission in rendering its decision: (1) the Plaintiff['s] Response to Defendant District of Columbia['s] Motion to Dismiss the Complaint with Prejudice ("Pl.'s Opp'n"), ECF No. 5.

CA 004562 R(RP) (D.C. Super. Ct. June 18, 2010). On July 16, 2010, the defendants in the 2010 Foreclosure Action removed the case to this Court, see Am. Compl. ¶ 6; Defendants SunTrust Mortgage, Inc. and Federal Home Mortgage Corporation's Notice of Removal at 1, Dunston v. SunTrust Mortg., Inc., Civ. Action No. 10-1208 (D.D.C. 2010) ("Freeman 2010"), ECF No. 1, and the case was assigned to Judge Robert L. Wilkins, see Docket Entry (Jan. 21, 2011), Freeman 2010. The parties ultimately reached a settlement in the case, see Joint Stipulation of Dismissal with Prejudice and Release of Escrowed Monies to Defendant SunTrust Mortgage, Inc. at 1, Freeman 2010, ECF No. 73, and the Court issued a Consent Order, stating that "[t]itle to the residential property . . . known as 5848 Eastern Avenue, N.E., Washington, DC 20011 ('Freeman Property') was never affected [by the attempted foreclosure sales on April 7, 2010], and thus, remains in the name of Alice M. Freeman[,]" Consent Order at 1, Freeman 2010, ECF No. 75.

  The plaintiff alleges that, "[w]hile [she] was in [federal] court litigating her cause of action against Fannie Mae [in the 2010 Foreclosure Action], [she] was illegally summoned to appear [on] August 18, 2011[,] in [the d]efendant[']s landlord tenant branch[] [for] case [number 2011 LTB] 019387 to answer a Verified Complaint for Possession of Real Property." Am. Compl. ¶ 6. The plaintiff further alleges that the "[Superior Court] judges exhibited bias[-]related discrimination in their harassing comments as [the p]laintiff referenced her being in federal court" for the 2010 Foreclosure Action and that the "harsh and petulant actions against the [p]laintiff continue[] today as a search of [the p]laintiff's name on the [d]efendant[']s court system 'cases online' [ ] [contains] no mention of case number [2011] LTB 019387 ever being filed against [the p]laintiff." Id. The plaintiff "ask[s] this [C]ourt to order [the d]efendant to

3

restore case [number] 2011 LTB 019387 . . . on DC Cases Online to allow [the p]laintiff unobstructed access to information contained therein." Id. ¶ 7.

### 2. The 2015 Foreclosure Action

The second lawsuit described in the plaintiff's Amended Complaint is a May 2015 foreclosure suit brought by SunTrust Mortgage, Inc. against the plaintiff (the "2015 Foreclosure Action"). See Am. Compl. ¶¶ 7–8; SunTrust Mortg., Inc. v. Freeman, No. 2015 CA 003501 R(RP) (D.C. Super. Ct. May 12, 2015) ("Freeman 2015"). On June 20, 2016, the Superior Court granted judgment in favor of SunTrust Mortgage, Inc., see Docket Entry (June 20, 2016), Freeman 2015, and, on January 3, 2018, the property was sold, see Am. Compl. ¶ 8; Docket Entry (Jan. 26, 2018), Freeman 2015. On November 2, 2018, the Superior Court issued an order granting the motion of the plaintiff in that case to ratify the accounting and closing the case. See Order at 1–2 (Nov. 2, 2018), Freeman 2015. With respect to the 2015 Foreclosure Action, the plaintiff alleges that the "[d]efendant[']s court system, [specifically] Judge [John] Mott, with bias[-]related discrimination[,] allowed [the January 3, 2018] sale to go forward." Am. Compl. ¶ 8.

### 3. The 2018 Foreclosure and Collateral Actions

Finally, the plaintiff's Amended Complaint references three lawsuits filed in Superior Court in 2018. See id. ¶¶ 8–10. Two of those lawsuits were attempts by the plaintiff, along with other plaintiffs, "to halt all foreclosure sales[.]" Id. ¶ 8; see Tate v. D.C. Superior Ct., No. 2018 CA 000008 B (D.C. Super. Ct. Jan. 2, 2018) ("Tate I"); Tate v. D.C. Superior Ct., No. 2018 CA 001915 B (D.C. Super. Ct. Mar. 20, 2018) ("Tate II") (the "2018 Collateral Action"). In Tate I, the plaintiffs entered a "voluntary dismissal" "[o]n March 20, 2018[.]" Am. Compl. ¶ 9. Subsequently, the Superior Court dismissed the 2018 Collateral Action with prejudice on June 22, 2018, see Docket Entry (June 22, 2018), Tate II, and dismissed the case

4

again on March 15, 2019, after the District of Columbia Court of Appeals remanded the case to the Superior Court for clarification of its decision, see Docket Entry (Mar. 15, 2019), Tate II. On June 30, 2020, the District of Columbia Court of Appeals affirmed the Superior Court's March 15, 2019 dismissal of the complaint in the 2018 Collateral Action. See Judgment at 1–2, Ford v. D.C. Superior Ct., No. 19-cv-530 (D.C. June 30, 2020).

The third lawsuit was brought by Uptown Development, LLC on March 20, 2018, against the plaintiff and others, seeking possession of a property located at 5848 Eastern Ave NE, Washington, DC 20017 (the "2018 Foreclosure Action"). See Verified Complaint for Possession of Real Property at 1, Uptown Dev. LLC v. Freeman, No. 2018 LTB 006982 (D.C. Super. Ct. Mar. 20, 2018) ("Uptown Development"); Am. Compl. ¶ 10. The plaintiff alleges that, during the litigation of the 2018 Foreclosure Action, "[Superior Court] Judge [Michael] Rankin . . . repeatedly admonished [her for] her participation in [the 2018 Collateral Action.]" Am. Compl. ¶ 10. The 2018 Foreclosure Action was resolved on July 2, 2018, when the Superior Court's Writ of Restitution, granting possession of the property to Uptown Development, LLC, was executed. See Writ of Restitution at 1–2, Uptown Development. The plaintiff alleges that the issuance and execution of the July 2, 2018 Writ of Restitution "result[ed] in [the p]laintiff being illegally evicted from her real property." Am. Compl. ¶ 10.

**B.     Procedural History**

On July 1, 2021, the plaintiff filed her initial Complaint in this case, see The Government and It[s] Federal Financial Assistance Court System of Negative Bias and Discriminatory Acts to Facil[i]tate Wrongful Evictions from Plaintiff[']s Real Property ("Compl.") at 1, ECF No. 1, and on August 11, 2021, the plaintiff filed an Amended Complaint, see generally Am. Compl. On November 16, 2021, the defendant filed its motion to dismiss, see Def.'s Mot. at 1, which is the

subject of this Memorandum Opinion.  Subsequently, on November 30, 2021, the plaintiff filed her opposition to the defendant's motion.  See Pl.'s Opp'n at 1.

## II.     STANDARD OF REVIEW

"Jurisdiction is a threshold issue which ordinarily must be addressed before the merits of the case are reached."  William Penn Apartments v. D.C. Ct. of Appeals, 39 F. Supp. 3d 11, 15 (D.D.C. 2014) (citing Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987); Walsh v. Hagee, 900 F. Supp. 2d 51, 55 (D.D.C. 2012)).  If "a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety."  Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006); accord Fed. R. Civ. P. 12(h)(3).  And, because "[i]t is to be presumed that a cause lies outside [ ] [the Court's] limited jurisdiction," Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), "the plaintiff bears the burden of establishing by a preponderance of the evidence that the Court possesses jurisdiction[,]" Moore v. Bush, 535 F. Supp. 2d 46, 47 (D.D.C. 2008).  Although "complaints filed by pro se litigants are held to less stringent standards than those applied to formal pleadings drafted by lawyers, even a pro se plaintiff bears the burden of establishing that the Court has subject[-]matter jurisdiction."  Newby v. Obama, 681 F. Supp. 2d 53, 55 (D.D.C. 2010) (internal citations and internal quotation marks omitted).

In deciding a motion to dismiss based upon lack of subject-matter jurisdiction, "the [C]ourt need not limit itself to the allegations of the complaint."  Grand Lodge of the Fraternal Ord. of Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001).  Rather, the "[C]ourt may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case."  Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see also Jerome Stevens Pharms., Inc. v. Food & Drug

Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005). Additionally, the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'" Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp., 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)). However, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13–14 (alterations in original) (internal quotation marks omitted).

### III.  ANALYSIS

The defendant argues that the plaintiff's claims should be dismissed because "subject[-]matter jurisdiction is lacking" based on the Rooker-Feldman doctrine, Def.'s Mot. at 7, given that the plaintiff "asks this Court to review prior decisions of the D.C. Court of Appeals and the D.C. Superior Court[,]" id. at 6. In response, the plaintiff argues that she "is not asking the [C]ourt to review final judg[]ments of a state court in judicial proceedings[,]" Pl.'s Opp'n at 4, but rather she "intends to show the defendant['s] . . . implicit bias against [her] to remove her from her real property[,]" id. at 6. For the following reasons, the Court concludes that the Rooker-Feldman doctrine bars the Court from exercising jurisdiction over the plaintiff's claims.

The Rooker-Feldman doctrine derives from the Supreme Court's decisions in Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), and precludes "a party losing in state court . . . from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Johnson v. DeGrandy, 512 U.S. 997, 1005–06 (1994) (citing Feldman, 460 U.S. at 482;

7

Rooker, 263 U.S. at 416); see also Gray v. Poole, 275 F.3d 1113, 1119 (D.C. Cir. 2002) ("The Rooker-Feldman doctrine prevents lower federal courts from hearing cases that amount to the functional equivalent of an appeal from a state court.").

The Supreme Court has clarified that the doctrine is "confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). Thus, in order for the Rooker-Feldman doctrine to bar a federal court from exercising jurisdiction over a claim, three requirements must be met: (1) "[T]he party against whom the doctrine is invoked must have actually been a party to the prior state-court judgment[;]" (2) "the claim raised in the federal suit must have been actually raised or inextricably intertwined with the state-court judgment[;]" and (3) "the federal claim must not be parallel to the state court claim." Lance v. Dennis, 546 U.S. 459, 462 (2006).

Here, the prior state court judgments at issue are the judgments in the 2015 Foreclosure Action, the 2018 Foreclosure Action, and the 2018 Collateral Action.[3]  The Court will begin by addressing the first and third requirements of the Rooker-Feldman doctrine, before turning to the second requirement.

A.     **The First and Third Rooker-Feldman Requirements**

The first and third criteria necessary for the Rooker-Feldman doctrine to apply are clearly satisfied in this case. With respect to the first requirement—i.e., that "the party against whom

---

[3] The plaintiff also alleges that she was "illegally summoned to appear" for case number 2011 LTB 019387 in Superior Court and that the "[Superior Court] judges exhibited bias[-]related discrimination in their harassing comments as [the p]laintiff referenced her being in federal court" for the 2010 Foreclosure Action. Am. Compl. ¶ 6; see supra Section I.A.1. However, the relief that the plaintiff requests—"[an] order [requiring the d]efendant to restore case [number] 2011 LTB 019387 . . . on DC Cases Online[,]" id. ¶ 7—is not the type of relief which this Court has authority to issue.

the doctrine is invoked must have actually been a party to the prior state-court judgment[,]" Lance, 546 U.S. at 462—the Rooker-Feldman doctrine is being invoked by the defendant against the plaintiff, who was "a party to the prior state court judgment[s at issue,]" id., which involved the foreclosure of her real property, see Am. Compl. ¶¶ 6–10; Freeman 2015 (listing the plaintiff as a party on the docket); Tate II (same); Ford v. D.C. Superior Ct., No. 19-cv-530 (D.C. June 30, 2020) (same); Uptown Development (same).

The third requirement of the Rooker-Feldman doctrine—i.e., that "the federal claim must not be parallel to the state court claim[,]" Lance, 546 U.S. at 462—is also satisfied here. "A federal-court claim is parallel to a state-court claim if it is filed after the state-court claim, but before the state court enters judgment." Bradley v. DeWine, 55 F. Supp. 3d 31, 42 (D.D.C. 2014) (citing Exxon Mobil, 544 U.S. at 289–91). The claims currently before this Court are "not parallel to the state-court claim[s,]" Lance, 546 U.S. at 462, because the plaintiff initiated the instant action after a final judgment was entered in each of the state court proceedings that she seeks to challenge, see Compl. at 1 (initiating the instant action on July 1, 2021); Order at 2 (Nov. 2, 2018), Freeman 2015 (closing the 2015 Foreclosure Action on November 2, 2018); Docket Entry (Mar. 15, 2019), Tate II (dismissing the 2018 Collateral Action on March 15, 2019); Judgment at 1–2, Ford v. D.C. Superior Ct., No. 19-cv-530 (D.C. June 30, 2020) (affirming the Superior Court's dismissal of the 2018 Collateral Action on June 30, 2020); Writ of Restitution at 2, Uptown Development (closing the 2018 Foreclosure Action on June 2, 2018).

**B.     The Second Rooker-Feldman Requirement**

To satisfy the second requirement of the Rooker-Feldman doctrine, "the claim raised in the federal suit must have been actually raised or inextricably intertwined with the state-court judgment[.]" Lance, 546 U.S. at 462. "[A] plaintiff's federal court claims are 'inextricably

intertwined' with a prior state-court judgment unless their 'core' is 'independent' of that judgment." Bradley, 55 F. Supp. 3d at 41 (citing Stanton v. D.C. Ct. of Appeals, 127 F.3d 72, 76 (D.C. Cir. 1997)).  In other words, "[a]n issue is 'inextricably intertwined' with a state court judgment if 'success on the federal claim depends upon a determination that the state court wrongly decided the issues before it.'" Richardson v. Am. Sec. Mortg. Corp., 866 F. Supp. 2d 35, 38 (D.D.C. 2012) (quoting Plyler v. Moore, 129 F.3d 728, 731 (4th Cir. 1997)) (internal quotation marks omitted).

Here, the plaintiff alleges that the defendant, "at various stages of litigation activities[,]" Am. Compl. ¶ 12, "caused [her] to be illegally and wrongfully evict[ed] [ ] from her real property through the use of bias[-]related discrimination[,]" in violation of 42 U.S.C. § 2000(d), id. ¶ 5. The plaintiff seeks damages amounting to "the value of the real property [from which she] was [allegedly] illegally evicted[,]" id. ¶ 11, as a result of the 2018 Foreclosure Action, see id. ¶ 10. Thus, "[f]ar from being 'independent' of the [judgments in the 2015 Foreclosure Action, the 2018 Collateral Action, and the 2018 Foreclosure Action], the 'core' of [the p]laintiff's claims is that the judgment[s] of foreclosure w[ere] invalid." Terry v. First Merit Nat'l Bank, 75 F. Supp. 3d 499, 509 (D.D.C. 2014).  "All of the injuries alleged in the [Amended] Complaint stem from the foreclosure of the [plaintiff's p]roperty[,]" Hunter v. U.S. Bank Nat. Ass'n, 698 F. Supp. 2d 94, 100 (D.D.C. 2010), and the plaintiff's claims "presuppose that the foreclosure and eviction were wrongfully conducted, which goes to the core of the prior state court foreclosure and eviction judgments[,]" Jung v. Bank of America, N.A., Civil Action No.: 18-962 (RC), 2018 WL 6680579, at *5 (D.D.C. Dec. 19, 2018); see also Bradley, 55 F. Supp. 3d at 42 (concluding that the plaintiff's claims that the defendants "conspired to abuse the judicial process in order to unlawfully deprive him of his property" were "far from [ ] 'independent' of the [state court

10

foreclosure] judgment" because the "'core of [his] claims [wa]s that the state-court judgment was fraudulent and therefore invalid"). Therefore, by asking the Court to award her "punitive damages" equal to "the value of the real property [from which she] was [allegedly] illegally evicted[,]" Am. Compl. ¶ 11, the plaintiff is "essentially ask[ing] the Court to reverse th[e] prior state court decisions[,]" Jung, 2018 WL 6680579, at *5. Consequently, the plaintiff's claims "are inexplicably intertwined with [ ] state court judgment[s.]" Hunter, 698 F. Supp. 2d at 100.

Accordingly, the Court concludes that all three of the Rooker-Feldman doctrine requirements are satisfied in this case, and the Court therefore lacks subject-matter jurisdiction over the plaintiff's claims. See id. at 101 (granting Rule 12(b)(1) motion for lack of subject-matter jurisdiction where all three Rooker-Feldman elements were met).

### IV.  CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the defendant's motion to dismiss the plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).[4]

**SO ORDERED** this 30th day of November, 2022.[5]

REGGIE B. WALTON
United States District Judge

---

[4] Although the defendant requests that the Court dismiss the plaintiff's Amended Complaint with prejudice, see Def.'s Mot. at 10, the Court "cannot dismiss [the plaintiff's Amended] Complaint with prejudice, as [the d]efendant[] ha[s] urged, because without subject[-]matter jurisdiction, the Court cannot reach the merits of [the plaintiff's] claims so as to preclude litigation in a proper forum, if one exists[,]" Hunter, 698 F. Supp. 2d at 101 n. 7.

[5] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.